Filed 6/13/22  In re D.M. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re D.M., a Person Coming Under the Juvenile Court Law. | B313281 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 21CCJP00812A |
| Plaintiff and Respondent, | |
| v. | |
| Eric M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore of the Juvenile Court.  Conditionally affirmed and remanded with directions.

Landon Villavaso, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

———————

Father Eric M. appeals from the juvenile court's dispositional order concerning his child D.M. (born February 2015). He contends the Los Angeles County Department of Children and Family Services (Department) failed to comply with its duty of initial inquiry under state law (Welf. & Inst. Code, § 224 et seq.) implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) when it did not ask extended family members if the child had Indian ancestry.[1] We conditionally affirm the dispositional order but remand the matter for the limited purpose of ensuring compliance with ICWA and related California law.

## BACKGROUND

This dependency proceeding concerns father, mother—who is not a party to this appeal—and their child D.M.

### 1. *Underlying dependency proceedings*

The Department became involved when it received a report alleging mother was smoking methamphetamine in D.M.'s presence. At the time, mother and father were not in a relationship; D.M. lived with mother. Father was living with paternal grandmother, paternal aunt, and D.M.'s half-sibling

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. Because ICWA uses the term "Indian," we do the same for consistency, although we recognize other terms are preferred. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

2

S.W.—father's daughter from another relationship. (The juvenile court declared S.W. a dependent in February 2011. It ultimately terminated its jurisdiction and awarded father and S.W.'s mother joint custody.)

After investigating the initial allegation and additional allegations about domestic violence between mother and her boyfriend, the Department had D.M. removed from mother and released to father. On February 22, 2021, the Department filed a section 300 petition alleging mother and her male companion had a history of engaging in violent physical altercations, mother failed to protect D.M. by allowing her male companion to live in the home with access to D.M., mother had a history of substance abuse and currently used methamphetamine, and father, who knew of the domestic violence and mother's substance abuse, failed to take action to protect D.M.

At the February 25, 2021 detention hearing, the court found father to be D.M.'s presumed father, detained D.M. from mother, and ordered the child released to father under the Department's supervision. According to the Department's jurisdiction/disposition report, paternal aunt (mainly) and paternal grandmother had become D.M.'s primary caretakers, as father did "not know how to parent."

Two months later, after it learned father was smoking marijuana and physically disciplining D.M., the Department filed a section 385 application to detain D.M. from father and place her with paternal grandmother. (Father moved out of the home.) On May 5, 2021, the juvenile court detained D.M. from father's custody. The Department then filed a first-amended section 300 petition, adding allegations that father had a history of substance abuse and was a current user of

marijuana, medically neglected D.M., and physically abused D.M. by striking her with a belt.

On June 3, 2021, the court convened a combined jurisdiction/disposition hearing on the amended petition. The court admitted the Department's reports into evidence and took judicial notice of the "judicial file" for S.W.'s dependency case. After hearing argument, the court sustained the amended petition—except for the medical neglect allegations against father—declared D.M. a dependent of the juvenile court, removed D.M. from parents,[2] and ordered monitored visitation and family reunification services for parents. The court ordered father to participate in drug testing, parenting classes, and individual counseling. Father appealed.

## 2. *Facts relevant to ICWA inquiry*

During the Department's initial investigation, mother told the social worker on January 21, 2021, that her family had no Indian heritage. The Department's detention report prepared on February 18, 2021, states ICWA does not apply.

A Department social worker filled out an Indian Child Inquiry Attachment, attached to the February 22, 2021 petition, stating she asked mother and father about the child's Indian status, and they "gave [her] no reason to believe the child is or may be an Indian child." On February 24, 2021, father filed, but did not sign, a January 1, 2008 version of the Parental Notification of Indian Status form (ICWA-020), checking the box, "I have no Indian ancestry as far as I know," and the box indicating no previous ICWA-020 form had been filed with

---

[2]  It appears D.M. remained placed with paternal grandmother.

4

the court.[3] On February 25, 2021, mother's counsel filed, on mother's behalf, an unsigned March 25, 2020 version of the ICWA-020 form and checked the box "None of the above apply."[4] Counsel also checked the box indicating a previous ICWA-020 form had not been filed with the court.

At the February 25, 2021 detention hearing, the court acknowledged mother had provided it with an ICWA-020 form "indicating that she does not have any American Indian ancestry as far as she knows" and found ICWA did not apply to her. The court noted father similarly had indicated he had no American Indian ancestry "as far as he knows" in his ICWA-020 form. The court continued, "So the court is going to find that ICWA does not apply to him or this case, and the child is residing with the father so ICWA would not apply anyway." The court's corresponding minute order states: "The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status." The minute order also states parents had signed and filed the ICWA-020 forms but—as we have said—neither form was signed.

---

[3] Father's counsel may have filled out the ICWA-020 form on his behalf. The form is typed and includes counsel's information.

[4] The boxes "above" state the parent, child, or one or more of parent's lineal relatives "is or may be a member of, or eligible for membership in, a federally recognized Indian tribe"; the parent or child "is a resident of or is domiciled on a reservation, rancheria, Alaska Native village, or other tribal trust land"; the child is or has been a ward of a tribal court; and either parent or the child possesses an Indian identification card.

The Department's March 30, 2021 jurisdiction/disposition report notes that, on March 18, 2021, father stated he did not have any American Indian ancestry, and, on March 19, 2021, mother stated she did not have any.

The investigator interviewed paternal grandmother and paternal aunt about the original petition's allegations. There is no indication from the jurisdiction/disposition report that the investigator asked either about D.M.'s ancestry.

At the June 3, 2021 hearing, the court noted it previously found ICWA did not apply to father and mother. The court mistakenly believed "the child is with father[,] [s]o ICWA does not apply." Minor's counsel clarified D.M. was with paternal grandmother, as the court had detained the child from father based on a section 385 petition. The court acknowledged it had done so. The minute order issued after that hearing does not mention ICWA.

**DISCUSSION**

Father contends the Department failed in its duty of inquiry because it did not ask father's extended family members, "who had available information that would shed meaningful light on whether the minor was an Indian child or not," about D.M.'s possible Indian ancestry. The Department contends "any such error is harmless" because father provided "sufficient and reliable" information "to make a meaningful determination that [D.M.] was not an Indian child," based on his repeated denials of Indian ancestry and considering his "close contact" with paternal grandmother and paternal aunt. The Department also argues "the juvenile court's finding there is no reason to

6

know that [D.M.] is an Indian child," therefore, "is supported by substantial evidence."

## 1. *Applicable law and standard of review*

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8; see 25 U.S.C. § 1902.) Both ICWA and state law define an " 'Indian child' " as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal definition].)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry." (*Benjamin M., supra*, 70 Cal.App.5th at p. 741.) Federal regulations implementing ICWA require *courts* to ask participants in a dependency case whether they know or have reason to know the child is an Indian child and to instruct the parties to inform the court " 'if they subsequently receive information that provides reason to know the child is an Indian child.' " (*Ibid.*)

California law, however, "more broadly imposes" on the Department and the juvenile court "(but not parents) an 'affirmative and continuing duty to inquire' whether a child

7

in the dependency proceeding 'is or may be an Indian child.' "
(*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 741–742, quoting
§ 224.2, subd. (a).) That duty to inquire "begins with [the] initial
contact . . . and obligates the juvenile court and child protective
agencies to ask all relevant involved individuals whether the
child may be an Indian child." (*In re T.G.* (2020) 58 Cal.App.5th
275, 290, citing § 224.2, subds. (a)–(c).)

Under the statute, when the Department takes a child into
its temporary custody, its duty of initial inquiry "includes, but is
not limited to, asking the child, parents, legal guardian, Indian
custodian, extended family members, others who have an interest
in the child, and the party reporting child abuse or neglect,
whether the child is, or may be, an Indian child." (§ 224.2,
subd. (b); *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742; see also
*In re Darian R.* (2022) 75 Cal.App.5th 502, 507.)[5] The juvenile
court, in turn, at a party's first appearance, must ask "each
participant present in the hearing whether the participant knows
or has reason to know that the child is an Indian child" (§ 224.2,
subd. (c)) and require each party to complete an ICWA-020 form
(Cal. Rules of Court, rule 5.481(a)(2)(C)). "The parties are
instructed to inform the court 'if they subsequently receive
information that provides reason to know the child is an
Indian child.' (25 C.F.R. § 23.107(a) (2020); § 224.2, subd. (c).)"
(*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

---

[5] Extended family members include adults who are the
child's "grandparent, aunt or uncle, brother or sister, brother-
in-law or sister-in-law, niece or nephew, first or second cousin,
or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [adopting
federal definition].)

8

Additional steps are required if there is a "reason to believe" or a "reason to know" an Indian child is involved, including providing form notice under ICWA to the child's tribe. (§§ 224.2, subd. (e), 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1); 25 U.S.C. § 1912(a).)[6]

We review the juvenile court's ICWA findings for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

## 2. *Substantial evidence does not support the juvenile court's finding*

In response to father's contention that it did not make a sufficient initial ICWA inquiry under section 224.2, subdivision (b) (224.2(b)), the Department argues any inquiry error on its part was harmless, and substantial evidence supports the court's finding that ICWA does not apply. Assuming, without deciding, the Department's initial inquiry under section 224.2(b) was sufficient, on this record we cannot conclude substantial evidence supports the court's finding it did not have reason to know D.M. is an Indian child, as defined under ICWA.

The Department's reports reflect that—before D.M. was removed from father—he twice denied having Indian ancestry, and he filed an ICWA-020 form denying he had Indian ancestry, as far as he knew. Father never signed his ICWA-020 form, however. He thus did not "declare under penalty of perjury" that his statement was true. And, inexplicably, the form is dated February 26, 2021—two days *after* it already had been filed on February 24, 2021. Moreover, even though father participated in the February 25, 2021 detention hearing through his counsel's

---

[6]     Those steps aren't at issue here.

speaker phone,[7] the court never questioned father directly about his ICWA-020 form response.  (See Cal. Rules of Court, rule 5.481(a)(2)(A) ["[a]t the first appearance by a parent . . . in any dependency case . . . the court must [¶] [a]sk each participant present whether the participant knows or has reason to know the child is an Indian child"].)

Given the irregularities with father's ICWA-020 form, we cannot conclude the court's acknowledgment on the record that father "filled out an ICWA-020 form indicating that he does not have any American Indian ancestry as far as he knows," was sufficient to satisfy its obligations under section 224.2, subdivision (c) and California Rules of Court, rule 5.481(a)(2)(A) and (C).  And, at that point in the proceedings, as the juvenile court noted, ICWA would not have applied in any event because D.M. had been removed from mother and placed with father. (See, e.g., *In re M.R.* (2017) 7 Cal.App.5th 886, 904 ["ICWA and its attendant notice requirements do not apply to a proceeding in which a dependent child is removed from one parent and placed with another."].)  By the June 3, 2021 jurisdiction and disposition hearing, that no longer was the case.  Yet, at that hearing, the juvenile court erroneously believed D.M. remained placed with father—rendering ICWA inapplicable—when it acknowledged its earlier finding (when D.M. was in father's care) that ICWA did not apply to father.  After recognizing it had in fact detained D.M. from father, the court nevertheless made no further finding concerning ICWA on the record, nor questioned father's counsel

_____

7    Due to the ongoing COVID-19 pandemic, participants in the hearings convened during this case appeared through WEBEX or telephonically.

about his Indian status.[8]  The court's June 3, 2021 minute order does not mention ICWA at all.

Accordingly, we cannot conclude there is sufficient evidence in the record to support the juvenile court's finding that it had no reason to know D.M. is an Indian child.  As father does not challenge the merits of the court's dispositional order—and does not challenge the court's jurisdictional findings at all— we conditionally affirm the court's dispositional order, but remand for the court to conduct a new hearing to determine whether ICWA applies.

Given the current uncertainty in the law concerning the Department's obligation to inquire of extended relatives under section 224.2(b) (compare, e.g., *In re Austin J.* (2020) 47 Cal.App.5th 870, 887 with *In re H.V.* (2022) 75 Cal.App.5th 433, 436, 438), we strongly encourage the Department to question paternal grandmother and paternal aunt—with whom the Department already is in contact—about D.M.'s Indian status and to report its findings to the juvenile court for the court to consider in determining whether it has a reason to know ICWA applies.[9]

---

[8]    Father's counsel waived father's appearance at the June 3, 2021 combined adjudication and disposition hearing, as well as the earlier May 5, 2021 detention hearing.

[9]    Although mother was not a party to this appeal, we also encourage the Department to make a reasonable effort to identify and question maternal extended family members.  According to the appellate record, mother has two siblings and her father (who lives in Arizona) is still alive.

## DISPOSITION

We conditionally affirm the court's June 3, 2021 dispositional order. The case is remanded to the juvenile court to conduct a new hearing, consistent with this opinion, to determine if it has reason to know D.M. is an Indian child, as defined under ICWA.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.